**Lisa LAWSON, Appellant–Plaintiff,**

v.

**RANEY MANUFACTURING, INC., Roger Raney and David Keener, Appellees–Defendants.**

**No. 36A05–9604–CV–133.**

Court of Appeals of Indiana.

March 31, 1997.

Rehearing Denied June 3, 1997.

**124**

Heidi L. Moegerle, Cohen & Morelock, Indianapolis, for Appellant–Plaintiff.

Edward J. Liptak, Douglas A. Hoffman, Miller Carson Boxberger & Murphy, Bloomington, for Appellees–Defendants.

## OPINION

SHARPNACK, Chief Judge.

Lisa Lawson appeals the granting of the motion to dismiss filed by appellees-defendants, Raney Manufacturing, Inc. ("RMI"), Roger Raney, and David Keener (collectively the "appellees"). The sole issue raised for our review is whether the trial court properly dismissed the action on the basis that it lacked subject matter jurisdiction. We affirm.

The record establishes that Lawson was hired by RMI, a corporation primarily engaged in the business of fiber board stamping and die cutting masonite and other materials. Lawson was hired to operate the machinery, including a Bliss punch press used for stamping and cutting. Raney and Keener were stockholders in RMI.

On her first day of work, October 24, 1994, Lawson sustained an amputation of both hands when she inserted them into the Bliss press and inadvertently tripped the electrical foot switch. On September 29, 1995, Lawson filed a complaint for damages and request for jury trial against RMI. In response, RMI filed a motion to dismiss the complaint because the trial court lacked subject matter jurisdiction. In support of the motion, RMI submitted affidavits from several current and former RMI employees. On October 23, 1995, Lawson filed her amended complaint.

On February 14, 1996, the trial court held a hearing on RMI's motion to dismiss. On March 12, 1996, the trial court granted the motion and issued findings of fact and conclusions thereon. Lawson now appeals.

### Discussion

■ The sole issue for our review is whether the trial court properly dismissed the action because it lacked subject matter jurisdiction. The legislature established the Worker's Compensation Act ("Act") as the

exclusive remedy for employment related injuries which occur "by accident." Ind.Code § 22–3–2–6. The Act provides in part that the rights and remedies granted to an employee, "on account of personal injury or death by accident *shall exclude all other rights and remedies* of such employee . . . at common law or otherwise, on account of such injury or death. . . ." I.C. § 22–3–2–6 (emphasis added). This exclusivity provision is expressly limited to personal injury or death arising out of and in the course of employment which occurs "by accident" and does not include employers' intentional torts within its coverage. *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1273 (Ind.1994). "Because we believe an injury occurs 'by accident' only when it is intended by neither the employee nor the employer, the intentional torts of an employer are necessarily beyond the pale of the act." *Id.*

When an employee files a tort action against an employer for injuries apparently covered by the Act, the employee must establish that the court's exercise of jurisdiction is proper. *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277, 1280 (Ind.1994); *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994) (the strong public policy favoring the coverage of employees under the Act warrants shifting the burden to the employee "to demonstrate some grounds for taking the claim outside" the Act), *reh'g denied.* The employee may not merely establish that the employer was negligent or reckless to vest jurisdiction in a court of law. *Baker*, 637 N.E.2d at 1275. Instead, "nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Id.* Moreover, it must be the employer who harbors the intent and not merely a supervisor, manager, or foreman. *Id.*

Tortious intent will be imputed to an employer that is a legal entity or artificial person where either (1) the corporation is the tortfeasor's alter ego or (2) the corporation has substituted its will for that of the individual who committed the tortious acts. *Perry*, 637 N.E.2d at 1287. To prevail on an alter ego theory, the employee must show that both ownership and control of the corpora-

tion are in the tortfeasor's hands. *Id.* Under the other theory, a corporation is chargeable with tortious intent when the individual who committed the tortious act was acting pursuant to a policy or decision made through the corporation's regular decision-making channels by those with the authority to do so. *Id.*

To establish the trial court's jurisdiction over the claim, the employee must produce evidence to support the jurisdiction and may not merely rely upon the pleadings. *Foshee*, 637 N.E.2d at 1280. If the employer challenges that jurisdiction, the claim should be advanced through a motion to dismiss for lack of subject matter jurisdiction pursuant to Ind. Trial Rule 12(B)(1). *Id.* Such motions are not treated as motions for summary judgment even when supporting materials are filed. *Id.*

In ruling on a motion to dismiss pursuant to T.R. 12(B)(1), the trial court may resolve factual disputes. *Perry*, 637 N.E.2d at 1286. The court has considerable latitude in devising procedures to ferret out the facts pertinent to jurisdiction. *Id.* at 1287. In doing so, the court may consider the complaint, motion, and any affidavits or evidence submitted. *Id.* Further, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

As a threshold matter, the parties dispute the standard of review to be used on appeal. Lawson argues that we must accept the facts alleged in her complaint as true, citing *Doe by Roe v. Madison Center Hosp.*, 652 N.E.2d 101, 103 (Ind.Ct.App.1995), *reh'g denied, trans. dismissed,* and *Putnam County Hosp. v. Sells*, 619 N.E.2d 968, 970 (Ind.Ct.App. 1993). Both of these cases rely upon *U.S. Steel Corp. v. Northern Indiana Pub. Serv. Co.*, 482 N.E.2d 501, 503 (Ind.Ct.App.1985), *reh'g denied,* for support. However, in all three of these cases, the trial court only considered the allegations in the complaint and the applicable law. Because the trial court was limited to the complaint, it was reasonable that the reviewing court would accept the facts alleged in the complaint as true. *See U.S. Steel*, 482 N.E.2d at 503 ("[n]o fact-sensitive supporting materials

were filed.... On appeal in T.R. 12(B)(1) cases so postured, we accept the facts as alleged in the complaint as true....").

 In contrast, the trial court in the present case considered "all of the parties' filings," including several affidavits filed by both Lawson and the appellees. Record, p. 335. The trial court held a hearing during which the parties presented arguments regarding the credibility and weight of those affidavits. Next, as part of its order, the trial court issued findings of fact and conclusions thereon to resolve many of the factual disputes. Accordingly, we will not blindly accept the allegations in Lawson's complaint as true, but will review the trial court's resolution of the factual disputes by applying the clearly erroneous standard.

 Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Estate of Banko*, 622 N.E.2d 476, 481 (Ind. 1993), *reh'g denied*. In determining whether the findings of fact are clearly erroneous, we consider the evidence most favorable to the judgment along with the reasonable inferences to be drawn therefrom. *Id.* We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* In its findings of fact, the trial court provided that:

"1. On October 24, 1994, the plaintiff, Lisa Lawson ("Lawson"), started her employment with defendant, Raney Manufacturing, Inc. Approximately three hours into her first day on the job, Lawson was injured while operating a press.

2. The plaintiff alleges that defendants were operating the press in question without a point of operation guard and/or safety device, and that defendants and their employees "had actual knowledge that injury was certain to occur." Plaintiff also alleges that Roger Raney and David Keener were each alter egos of Raney Manufacturing, Inc. and knew that the press, as outfitted, 'would certainly result in injuries'....

\* \* \*

4. Plaintiff injured both of her hands on October 24, 1994 when her hands were in the Bliss press and she inadvertently tripped the electrical foot switch on the press. That foot switch was equipped with a toe cover which required the operator to lift that cover with her foot in order to depress the foot pedal. Plaintiff states that she was told by one of Raney Manufacturing, Inc.'s employees, Kim Raney that it was necessary for plaintiff to insert her gloved hands into the point of operation of the Bliss press to properly insert and remove stock that became stuck in the press.

5. Defendants have presented evidence which contradicts the allegations made by plaintiff.... In their affidavits, Roger Raney and various employees ... have stated that the Bliss press on which plaintiff was injured on October 24, 1994 always had a wire mesh and plexiglass guard on it while it was in operation....

\* \* \*

7. Attached to Roger Raney's Affidavit as Group Exhibit 'A' are reproductions of three photographs taken of the press in question and the foot pedal which operated the press. Those photographs were taken by IOSHA representatives, in Mr. Raney's presence, the day after Lisa Lawson's October 24, 1994 injury.

8. The photographs show the plexiglass and wire mesh guard on the front of the Bliss press.

9. Plaintiff has presented several affidavits in support of her allegation that there was no point of operation guard on the Bliss press.... The affidavit of James Boggs states that Mr. Boggs fabricated the guard on the morning of October 25, 1994, after plaintiff's injury and before IOSHA was called by Roger Raney. The affidavit of Lisa Lawson Royse states that, prior to October 24, 1994, presses were operated at Raney Manufacturing, Inc. without a point of operation guards [sic] in place.

10. However, Mr. Boggs' work records cast considerable doubt on whether he fabricated a guard on the morning of October 25, 1994, with the records showing that he was working on some other job. The

Royse affidavit makes no mention of the operation of the Bliss press without a point of operation guard at any time nor does Ms. Royse indicate that the principals of Raney Manufacturing, Inc., Roger Raney and David Keener ever knew that employees at Raney Manufacturing, Inc. ever operated presses or other machines without guards.

\* \* \*

12. No one instructed the plaintiff to put her hands into the Bliss press point of operation and to activate the foot pedal so as to cause her injury.

13. There is no evidence that the owners of Raney Manufacturing, Inc., Roger Raney and David Keener, ever intended for the plaintiff to be injured on October 24, 1994.

14. There is no evidence that Roger Raney, David Keener, or anyone else had actual knowledge that an injury to plaintiff was certain to occur on October 24, 1994."

Record, pp. 336–339. After resolving the factual disputes, the trial court found that Lawson had not met her burden to demonstrate either that the appellees intended to injure her or that they had actual knowledge that an injury was certain to occur. The court concluded in part:

"6. Even if the Court were to accept plaintiff's version of the accident as true, she has not met her burden. At most, plaintiff has shown that she was instructed by a supervising co-worker to remove material from an unguarded point of operation. She was not instructed to place her hands in the point of operation and to activate the foot pedal at the same time. Thus, if this Court accepts plaintiff's factual allegations as true, those allegations may show recklessness, but not intent to injure or actual knowledge that an injury

was certain to occur on the part of plaintiff's employer.

7. A showing of wantonness and recklessness in the use of a dangerous workplace procedure is not sufficient to show intentionality as required by the *Baker* case. . . .

8. Accordingly, plaintiff has not met her burden of showing deliberate intent to injure or actual knowledge that her injury was certain to occur on the part of the defendants so as to give this Court subject matter jurisdiction over her claim. This case is properly within the jurisdiction of the Worker's Compensation Board of Indiana."

Record, p. 340.

The parties essentially agree that the issue before us is whether Lawson satisfied her burden to demonstrate that the appellees[1] had actual knowledge that an injury was certain to occur as required under *Baker*.[2] As an initial matter, Lawson argues that because she alleged the appellees had actual knowledge that an injury was certain to occur, she satisfied her burden to demonstrate that the trial court had jurisdiction. However, as we previously stated, a party may not simply rest on her allegations, but instead must provide evidence to support the jurisdiction. *See Foshee*, 637 N.E.2d at 1280.

In the alternative, Lawson claims she submitted sufficient evidence to demonstrate that the appellees had actual knowledge that an injury was certain to occur. Lawson relies upon the affidavit of Gerald Rennell, a professional safety consultant, as evidence that the appellees had actual knowledge. In Rennell's affidavit, he testified that the inadvertent tripping of an electrical foot switch on a punch press was likely to occur. Rennell stated that, "[i]nadvertent tripping of an electrical foot switch . . . is an expected event in the manufacturing industry that is immediately apparent to owners, managers,

1. Lawson initially alleged that Raney and Keener owned and controlled RMI. However, in their motion to dismiss, the appellees argued in part that Raney and Keener were shielded from liability as individual defendants because RMI was incorporated and because Lawson had not alleged facts to pierce the corporate veil. In response, Lawson amended her complaint and alleged that Raney and Keener were the alter egos of RMI and that they were in exclusive control of RMI.

2. Lawson has not alleged that the appellees deliberately intended to inflict injury upon her.

trainers, and employees due [sic] movement of the ram; the noise the press produces and waste of time and/or stock that results." Record, p. 277. Rennell concluded that:

"In the absence of extreme stupidity, the owners, managers, trainers, and employees of Raney Manufacturing, Inc., knew that severe injuries were certain to occur to inexperienced operators of the Bliss press that were improperly instructed to place their hands into the point of operation while manually loading and unloading the press, which was controlled with an electrical foot switch and which was not equipped with a point of operation guard."

Record, p. 279.

However, contrary to Lawson's suggestion that this affidavit satisfied her burden to demonstrate actual knowledge, we find that it only describes a standard in the manufacturing industry. In his affidavit, Rennell did not address what the appellees actually knew because, as the appellees note, Rennell had no direct knowledge about what the appellees knew regarding the likelihood of an injury on the press. Accordingly, we find that Rennell's affidavit did not constitute proof of the appellees' actual knowledge that an injury was certain to occur.

■ Lawson takes issue with the fact that the term "actual knowledge" has not been defined or applied by any court in this state since the supreme court held that to vest the trial court with jurisdiction, "nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Baker*, 637 N.E.2d at 1275. We note that short of a concession by the employer that he had actual knowledge

an injury was certain to occur, the plaintiff-employee would have to demonstrate actual knowledge by circumstantial evidence. Although Rennell's affidavit may constitute circumstantial evidence of actual knowledge, nothing in the affidavit is conclusive by itself to warrant a reversal of the trial court's factual determination. Perhaps, if Lawson could have shown that many RMI employees suffered similar injuries on the same type of machine, that there had been many complaints submitted to Raney and Keener, or that Raney and Keener regularly observed and approved the use of the press without guards, then Rennell's affidavit would be more persuasive. Standing alone, however, it does not require us to reverse the trial court. Therefore, we conclude that Lawson has not met her burden to demonstrate that the appellees had actual knowledge that an injury was certain to occur.[3]

Because Lawson has not satisfied her burden to demonstrate that the employer had actual knowledge that an injury was certain to occur, she has not demonstrated that her injury was outside the scope of the Act. Accordingly, the trial court properly dismissed the action for lack of subject matter jurisdiction.[4]

For the foregoing reasons, we affirm the judgment in all respects.

BARTEAU and RUCKER, JJ., concur.

---

**3.** Further, we note that Lawson is essentially asking us to reweigh the evidence, which we may not do. *See Banko*, 622 N.E.2d at 481. Rather, we consider the evidence most favorable to the judgment along with the reasonable inferences to be drawn therefrom. *Id.* The evidence most favorable to the dismissal consists of Raney's affidavit, where Raney testified that "I have always personally made certain that all of [RMI's] presses and riveters had guards of wire mesh and plexiglass protecting all operators from pinch points," and that "[o]n or before October 24, 1994, I did not know or even imagine that an injury was possible, much less certain to occur on any of [RMI's] presses." Record, pp. 189, 191. Lawson claims Raney stated only that the

presses had guards and not that the guards were used. She also relies upon the affidavits of Royse and other RMI employees as evidence that the appellees had actual knowledge that the presses did not have guards on them. Again, these arguments are requests to reweigh the evidence and judge the credibility of the witnesses, which we may not do. *See id.*

**4.** Because Lawson is limited to a recovery under the Act, we need not consider her argument that the trial court erred in dismissing her claims under the Employer's Liability Act, I.C. § 22–3–9–1.