SAVE THE VALLEY, INC., Thomas Breitweiser and L. Jae Breitweiser, Appellants–Plaintiffs,

v.

The INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and John Hamilton in his official capacity as Commissioner of the Indiana Department of Environmental Management, Appellees–Defendants.

No. 49A02–9904–CV–266.

Court of Appeals of Indiana.

Feb. 29, 2000.

Rehearing Denied April 13, 2000.

E. Scott Treadway, Kevin M. Kohart, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorneys for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Barbara Gasper Hines, Beth H. Henkel, Deputy Attorneys General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Save the Valley, Inc., Thomas Breitweiser, and L. Jae Breitweiser (collectively "STV") appeal the decision of the trial court to dismiss their suit against the Indiana Department of Environmental Management (IDEM), raising numerous issues for review. We address one, which we find dispositive: whether the trial court erred in determining that it lacked jurisdiction to decide the controversy because STV had failed to exhaust its administrative remedies.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Save the Valley, Inc. is a not for profit corporation whose purpose is to protect and improve the environment in a portion of the Ohio River Valley that includes Jefferson County, Indiana. The Breitweisers are landowners in Jefferson County. In May 1997, David Ferguson applied for a permit to construct a confined animal feeding operation (CAFO) on his property in Jefferson County. CAFOs are large, industrial hog farms.

In September 1997, STV brought suit challenging Ferguson's application and arguing that the statute giving IDEM the authority to review and evaluate CAFO applications was unconstitutional. STV sought a declaratory judgment that the statute was unconstitutionally vague because IDEM had failed to enact regulations for CAFO applications. Specifically, STV's complaint asked the trial court to "declar[e] that [IC] 13–18–10 *et seq.*, as amended in 1997, violates the Indiana Constitution and Constitution of the United States and is void and of no force or effect; [and] declar[e] that IDEM is required to adopt specific rules and regulations relating to the permitting and operation of CAFOs and the enforcement of [IC] 13–18–10 *et seq.* (1997) prior to processing, considering and approving any CAFO application." *Record* at 34.

In April 1998, Ferguson withdrew his application, then reapplied later that month. IDEM approved his application in July 1998.

IDEM moved to dismiss STV's suit. On November 24, 1998, the trial court issued findings of fact and conclusions thereon dismissing STV's complaint. STV now appeals.

## DISCUSSION AND DECISION

The trial court granted IDEM's motion to dismiss for lack of subject matter jurisdiction. When a party seeks dismissal of a case pursuant to Indiana Trial Rule 12(B)(1) for lack of subject matter jurisdiction, the trial court must decide whether it possesses the authority to further adjudicate the action. *Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326, 1328 (Ind.Ct.App. 1998), *trans. denied*. In making this determination, the trial court may consider evidence outside the pleadings. *In re R.P.D. ex rel. Dick*, 708 N.E.2d 916, 919 (Ind.Ct.App.1999), *trans. denied*. The trial court must immediately resolve factual disputes that bear on its jurisdiction. *Id.* Where the facts are not in dispute, however, this court reviews the trial court's decision de novo. *Matonovich*, 691 N.E.2d at 1328.

The trial court entered special findings of fact and conclusions of law pursuant to IDEM's request. Where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *R.P.D.*, 708 N.E.2d at 919. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Lawson v. Raney Mfg., Inc.*, 678 N.E.2d 122, 126 (Ind.Ct.App.1997), *trans. denied*. In determining whether the findings of fact are clearly erroneous, we consider the evidence most favorable to the judgment along with the reasonable inferences to be drawn therefrom. *Id.* This court neither reweighs the evidence nor assesses the credibility of the witnesses. *Id.*

STV first argues that the trial court erred in determining that it lacked subject matter jurisdiction because STV had failed to exhaust all administrative remedies. It argues that there are no administrative remedies to exhaust and that it was not required to exhaust administrative remedies before filing the instant action.

Where an administrative remedy is available, such remedy must be pursued before the claimant is allowed access to the courts. *Johnson Oil Co. v. Area Plan Comm'n of Evansville & Vanderburgh County*, 715 N.E.2d 1011, 1014 (Ind. Ct.App.1999). In such cases, the administrative agency is said to have primary jurisdiction. *Id.* The rationale underlying this policy is that administrative bodies have specialized expertise and are better suited to adjudicate the dispute. *State v. Sproles*, 672 N.E.2d 1353, 1358 (Ind.1996). In considering whether to invoke the doctrine of primary jurisdiction in the case of an issue that can be considered by either the trial court or the agency, the decision is within the discretion of the trial court. *Johnson Oil*, 715 N.E.2d at 1014. The relevant factors include what sort of facts will arise, whether the factfinding involved is within the special expertise of the agency, the degree to which uniformity is desirable, and the effect a court decision would have on desirable uniformity. *Id.* A party's failure to exhaust its administrative remedies creates a jurisdictional defect and makes a motion to dismiss for lack of subject matter jurisdiction appropriate. *Matonovich*, 691 N.E.2d at 1328–29.

The legislature has statutorily delegated the process of granting CAFO permits to IDEM. IC 13–18–10–1 states that a person may not start construction of a CAFO without first obtaining the approval of IDEM. IC 13–18–10–2 sets out the information that the application must contain, including plans and specifications for the manure treatment facilities, a manure management plan, and maps of manure application areas. In addition, the statute provides that IDEM can require a CAFO

applicant to submit additional information about the proposed site, including topography, soil, drainage, identification of ditches and bodies of water, field tiles, land application areas, location of manure treatment facilities, and location of water wells on the site. IC 13–18–10–2. The statute also provides that IDEM can make any additional investigation it deems necessary in considering the application. IC 13–18–10–2.1(a)(2). Further, IDEM may amend or revoke an approval if needed to prevent discharges of manure into the environment that pollute or threaten to pollute water. IC 13–18–10–2.1(e)(2). The nature of the information described demonstrates that the legislature's purpose in giving this responsibility to IDEM is to enable IDEM, the agency with specialized expertise in evaluating environmental impacts, to review all CAFO applications for possible adverse impacts on surrounding land. It would therefore appear that IDEM has primary jurisdiction over all challenges to CAFO applications.

Nonetheless, STV argues that it has no administrative remedies to exhaust because it is raising an issue of constitutional law, which IDEM has no authority to entertain. In *Town Board of Orland v. Greenfield Mills, Inc.,* 663 N.E.2d 523 (Ind.1996), landowners filed suit to enjoin a town from constructing a sanitary sewer system. The trial court granted the preliminary injunction, but the supreme court reversed. The court examined the issues in the case to determine if any fell within the jurisdiction of the trial court. *Id.* at 525. It noted that the landowners sought injunctive relief only for prospective harm to the environment in general and to the landowners' private property rights. The court then looked at the statutory provisions concerning IDEM's authority to grant permits for water pollution control or sewage treatment plants. The court noted that the statute provided for judicial review of agency decisions and that the primary purpose of the statute is protection of the environment. *Id.* at 527. Thus, the court concluded that "it appears

that the statute here gives IDEM authority over precisely that which landowners seek and, if so, divests the trial court of subject matter jurisdiction over landowners' complaint." *Id.*

The court rejected the landowners' contention that there were no administrative remedies to exhaust in their case because their complaint raised constitutional issues over which IDEM had no authority. The court noted that although the landowners phrased their complaint in terms of trespass, nuisance, and taking, in essence what they asked of the trial court was to prevent the construction of the sewage treatment project and the consequent environmental damage they believed would occur. This was precisely the province of IDEM under the statute. Thus, the trial court held that the trial court had no jurisdiction to entertain this suit. *Id.*

Likewise, in this case, STV phrases its argument in terms of whether the CAFO statute is unconstitutionally vague and complains of the damage to the environment in general and their property in particular which they believe Ferguson's intended CAFO will occasion. The essence of their complaint is that they are asking the trial court to void the CAFO permit IDEM issued to Ferguson, and indeed, to prohibit IDEM from issuing CAFO permits altogether. STV argues that Ferguson's CAFO will harm the environment and its property interests. However, the legislature has already addressed the potential for such harms. Protecting the environment from the potential hazards CAFOs might create is the express purpose of the CAFO statute. The decision to issue CAFO permits is a matter entrusted to IDEM by the General Assembly. In light of the strong policy reasons for favoring resolution of potential pollution issues by IDEM, the agency with the necessary specialized knowledge to evaluate factual disputes, we see no reason why STV's "constitutional" question should not first be resolved by agency adjudication. The

trial court did not abuse its discretion in dismissing STV's suit for lack of subject matter jurisdiction.

STV also argues that it is not required to exhaust its administrative remedies in this case under the holding of this court in *Indiana Dep't of Environmental Management v. Chemical Waste Management of Indiana, Inc.*, 604 N.E.2d 1199 (Ind.Ct. App.1992), *trans. denied* (1993). In that case, Chemical, the owner of a hazardous waste disposal site brought a declaratory judgment action that IDEM's practice of applying the "good character" law retroactively to its pending application for a permit was impermissible and vague. IDEM sought to have the suit dismissed, arguing that Chemical failed to exhaust administrative remedies because it had not yet finished reviewing Chemical's application. This court held that the trial court did not err in denying IDEM's motion to dismiss because Chemical's complaint challenged the constitutionality of the law and the legality of applying it retroactively. Because Chemical was not seeking review of IDEM's anticipated determination of its character, but was instead contesting an IDEM policy, we held that the trial court did not abuse its discretion in allowing Chemical to maintain its suit for declaratory judgment without first having submitted to agency review. *Id.* at 1203.

While we agree with the principles enunciated in *Chemical Waste*, one essential difference between it and the present case renders it inapplicable here. In *Chemical Waste*, the party challenging IDEM's procedures in reviewing permits was the applicant itself. Thus, any determination of the constitutionality of the law and the procedures enacted thereunder would have a direct effect on the rights and status of the party seeking declaratory judgment. The retroactive application of the law would cause an additional burden on the applicant and delay the application process. Here, there is no such effect. STV is not directly affected by the CAFO statute and permitting procedures. Only applicants are directly impacted by IDEM's procedures in granting or denying CAFO permits. Therefore, *Chemical Waste* is distinguishable. The trial court did not abuse its discretion in dismissing STV's complaint.[1]

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

1. STV also contends that a number of the trial court's findings of fact and conclusions of law are clearly erroneous. The findings of fact STV challenges pertain to the issue of STV's standing to bring the instant suit. Because we have held that STV has failed to exhaust its administrative remedies, this issue is moot. STV also argues that the trial court's conclusions that *Town Board of Orland*, not *Chemical Waste*, applies here is erroneous. We agree with the trial court's analysis, as set out above. We also agree with the trial court's conclusions that cases that should be resolved on non-constitutional grounds where possible, and that the Office of Environmental Adjudication should first determine whether IDEM correctly applied the CAFO statutes. These conclusions merely underscore the trial court's determination that STV has not exhausted its administrative remedies. The trial court's findings and conclusions are not clearly erroneous. The trial court did not err in dismissing STV's complaint.