SUN LIFE ASSURANCE COMPANY OF CANADA, Sun Life Assurance Company of Canada (U.S.), Sun Life Assurance Company of Canada (U.S.)as Successor by Merger to Keyport Life Insurance Company, Appellants–Plaintiffs,

v.

INDIANA COMPREHENSIVE HEALTH INSURANCE ASSOCIATION, Appellee–Defendant.

No. 49A05–0409–CV–473.

Court of Appeals of Indiana.

May 31, 2005.

Michael E. Brown, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellants.

Wayne C. Turner, Anne L. Cowgur, McTurnan & Turner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Sun Life Assurance Company of Canada, Sun Life Assurance Company of Canada (U.S.), and Sun Life Assurance Company of Canada (U.S.) as successor by merger to Keyport Life Insurance Company (collectively, "Sun Life") appeal the trial court's dismissal of its complaint seeking to enjoin the Indiana Comprehensive Health Insurance Association ("Association") from applying the provisions of Indiana Code § 27–8–10–1 et seq. to them. We find that the trial court did not abuse its discretion in determining that it did not have subject matter jurisdiction over the case because Sun Life failed to exhaust its administrative remedies. Thus, we affirm.

### Facts and Procedural History

As background, we begin with a brief history of the Association. In 1981, the Indiana General Assembly created the Indiana Comprehensive Health Insurance Association. Its purpose is to provide health insurance for those who may not otherwise be able to obtain coverage. Ind.Code § 27–8–10–2.1(a). Individuals eligible for coverage through the Association are Indiana residents who have been denied coverage by a medical insurance carrier without accepting material underwriting restrictions or who are unable to obtain health insurance except at a rate above the Association premium. Ind.Code § 27–8–10–5.1. Every health insurer, health maintenance organization, limited service health maintenance organization, and self-insurer of health care coverage is required to be a member of the Association. I.C. § 27–8–10–2.1(a).

At its formation, the Association was required to submit to the Commissioner of the Department of Insurance ("Commissioner") a Plan of Operation "necessary or suitable to assure the fair, reasonable, and equitable administration of the association." I.C. § 27–8–10–2.1(c). The Plan and amendments are required to be approved by the Commissioner if after notice and hearing it is determined that they are suitable to assure the fair, reasonable, and equitable administration of the Association and provide for the sharing of Association losses on an equitable, proportionate basis among the member carriers, health maintenance organizations, limited service health maintenance organizations, and self-insurers. Id.

By statute, Association premiums are limited to 150–200%[1] of the average rate charged by the five carriers with the largest premium volume in Indiana during the preceding calendar year. I.C. § 27–8–10–2.1(g). Because its rates are subject to this statutory cap and because the Association insures high-risk individuals, the As-

---

1. The 150% figure applies to an insured whose family income is less than 351% of the federal income poverty level for the same size family. The 200% figure applies to an insured whose family income is more than 350% of the federal income poverty level for the same size family.

sociation incurs substantial losses every year. *M–Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n,* 809 N.E.2d 834, 836 (Ind.2004) (citing *Associated Ins. Cos. v. Ind. Dep't of State Revenue,* 655 N.E.2d 1271, 1272 (Ind. Tax Ct.1995), *trans. denied*). The Association is authorized by statute to assess these losses "to all members in proportion to their respective shares of total health insurance premiums . . . or any other equitable basis as may be provided in the plan of operation." I.C. § 27–8–10–2.1(h).

Indiana Code § 27–8–10–2.6 delineates the internal appeal procedure for member associations to follow to present any challenge to the Association's actions. Specifically, if a member wishes to challenge the Association's Plan of Operation or assessment methodology, the member is directed to appeal first to the Association's Board of Directors. I.C. § 27–8–10–2.6(a). If the member is unsatisfied with the Board's decision, or if the Board does not act on the member's complaint within thirty days, the member can appeal to the Commissioner. I.C. § 27–8–10–2.6(b). The statute further provides that a final action or order of the Commissioner on an appeal is subject to judicial review. I.C. § 27–8–10–2.6(e).

Sun Life Assurance Company of Canada is an insurance company domiciled in Canada, which does business in the United States and has its principal place of business in Massachusetts. Sun Life Assur-

ance Company of Canada (U.S.) is an insurance company domiciled in the State of Delaware. Both companies, which we collectively refer to as Sun Life in this opinion, provide medical stop-loss coverage to self-insured entities in Indiana. Stop-loss insurance policies cover liability for medical expenses incurred by employees in excess of a predetermined attachment point. Appellant's App. p. 20.

In April 2004, Sun Life filed a complaint in Marion Superior Court seeking a preliminary and permanent injunction to prevent the Association from applying the provisions of Indiana Code § 27–8–10–1 *et seq.* to it.[2] Sun Life did not first comply with the administrative appeal process detailed in Indiana Code § 27–8–10–2.6. Consequently, the Association filed a motion to dismiss in June 2004, in which it argued that the trial court lacked subject matter jurisdiction because Sun Life failed to exhaust its administrative remedies.

Sun Life responded by claiming that it was not required to exhaust administrative remedies because it was not a member of the Association and therefore was not covered by Indiana Code § 27–8–10–1 *et seq.* The trial court granted the Association's motion to dismiss, and Sun Life now appeals.

### Discussion and Decision

In its brief, Sun Life argues only that it is not a member of the Association because it sells stop-loss insurance,[3] which Sun Life

---

**2.** Sun Life also obtained an *ex parte* temporary restraining order ("TRO") without notice to the Association as a means of preventing the Association from informing the Commissioner of the Department of Insurance about Sun Life's refusal to pay overdue Association assessments. Upon the Association's motion, the TRO was dissolved, and Sun Life eventually paid—under protest—its delinquent assessments.

**3.** We note that this court has previously found some stop-loss insurers to be members of the Association. *See Avemco Ins. Co. v. State ex rel. McCarty,* 812 N.E.2d 108, 122 (Ind.Ct. App.2004) ("[W]e find that the medical stop loss insurers are members of ICHIA, by the definition of their business. Specifically, the medical stop loss insurers insure for medical expenses incurred by individuals within the scope of their policies. Additionally, the record discloses that the medical stop loss insurers have all applied for and received certifi-

classifies as a type of reinsurance. Starting from this premise, Sun Life argues that the provisions of Indiana Code § 27-8-10-1 *et seq.*, including the administrative appeal process, do not apply to it and that it may proceed directly to judicial review of the Association's decision. Whether Sun Life is a member of the Association is not the question we face here. Rather, we must decide whether the trial court correctly granted the Association's motion to dismiss for lack of subject matter jurisdiction.

■ Our standard for reviewing the trial court's ruling on a motion to dismiss for lack of subject matter jurisdiction is dependent upon whether the trial court resolved disputed facts and if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Fratus v. Marion Cmty. Schs. Bd. of Trs.*, 749 N.E.2d 40, 43 (Ind. 2001). Where, as here, there are disputed facts but the trial court rules on a paper record, our review of the trial court's ruling is *de novo. GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001).

■ Indiana views the failure to exhaust administrative remedies as a matter of subject matter jurisdiction. *M–Plan*, 809 N.E.2d at 837. Stated otherwise, where an administrative remedy is available, such remedy must be pursued before the claimant is allowed access to the courts. *Save the Valley, Inc. v. Ind. Dept. of Envtl. Mgmt.*, 724 N.E.2d 665, 668 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* Thus, a party's failure to exhaust its administrative remedies creates a jurisdictional defect and makes a motion to dismiss for lack of subject matter jurisdiction appropriate. *Save the Valley*, 724 N.E.2d at 668.

Our supreme court has repeatedly emphasized the value of exhausting administrative proceedings before resorting to judicial review. *State Bd. of Tax Comm'rs v. Montgomery*, 730 N.E.2d 680, 684 (Ind. 2000) (quoting *Sproles*, 672 N.E.2d at 1358). The rationale underlying this policy of requiring the exhaustion of administrative remedies is that administrative bodies have specialized expertise and are better suited to adjudicate the dispute. *State v. Sproles*, 672 N.E.2d 1353, 1358 (Ind.1996). The reasons for requiring the exhaustion of administrative remedies are well established: (1) premature litigation may be avoided; (2) an adequate record for judicial review may be compiled; and (3) agencies retain the opportunity and autonomy to correct their own errors. *Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind.2003).

Sun Life concedes that it did not pursue any · administrative remedies. Because Sun Life claims it is not a member of the Association, however, it maintains that it did not have to exhaust the administrative remedies set forth in Indiana Code § 27-8-10-2.6. This argument is similar to the one rejected by our supreme court in *State ex rel Paynter v. Marion County Sup.Ct., Room No. 5*, 264 Ind. 345, 344 N.E.2d 846 (Ind.1976).

In *Paynter*, the Health Facilities Council of the State Board of Health initiated an investigation because it believed that Betty Miller was operating a health facility

---

· cates of authority to engage in the business of health insurance in this state and report health premiums to the Indiana Department of Insurance."). However, in that case, the stop-loss insurers had pursued their administrative remedies before seeking judicial re-

view, and therefore there was an adequate administrative record established for judicial review. The same cannot be said for this case. Consequently, *Avemco* does not control this case.

without a license, and following its investigation, it notified Miller that a hearing had been scheduled on the matter. After unsuccessfully filing a motion to dismiss with the Council, Miller sought a writ of prohibition in the Marion Superior Court ("Miller's writ"), which was granted. The Council then filed a motion to vacate Miller's writ. After the trial court denied the Council's motion to vacate Miller's writ, the Council sought its own writ from the Indiana Supreme Court ("Council's writ") to enjoin the trial court's orders from being enforced. The supreme court issued a temporary writ, which it subsequently determined should be permanent. *Id.* at 851.

In reaching the decision to make the Council's writ permanent, our supreme court held that Miller's contention that the facility she was operating was not a "health facility" did not excuse her from failing to exhaust administrative remedies. *Id.* ("It is fundamental that no one is entitled to judicial relief until the prescribed administrative remedies have been exhausted. This principle cannot be circumvented by merely asserting that the investigation by the administrative body is groundless."). The court explained:

> The challenge to jurisdiction here is really no challenge to jurisdiction at all. It is merely a denial of the allegations against Respondents. To say that this should deprive the Health Facilities Council of jurisdiction is to suggest that a criminal trial court is without jurisdiction over a defendant who pleads not guilty. Our criminal courts do not have jurisdiction over just 'criminals.' They have jurisdiction over persons accused of crimes.

*Id.* at 849. Thus, the court determined that whether a particular facility falls within the statutory definition was a question

that generally "must be left with the agency." *Id.*

■ We find *Paynter* to be controlling. The Association assessed Sun Life as a member. Pursuant to *Paynter,* Sun Life should not be able to escape the assessment and the administrative procedures for challenging the assessment by now claiming it is not a member. Rather, whether an insurer is a member is a decision that should be left to the expertise of the Board of Directors or Commissioner. After all, "[a]n administrative board has a right to determine whether ... the matter to be investigated falls within the purview of its authority and duties to enforce the law[.]" *Id.* at 851. Similarly, the Board or Commissioner has the right to determine whether Sun Life falls within the purview of its authority. As the Association correctly asserts, Sun Life cannot avoid pursuing administrative remedies by merely claiming that it is not a member of the Association.

■ Furthermore, the Association argues that Sun Life cannot avoid the exhaustion requirement by resorting to the pure question of law exception. "A pure question of law is one that requires neither reference to extrinsic evidence, the drawing of inference therefrom, nor the consideration of credibility questions for its resolution." *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). Sun Life agrees that it cannot avail itself of the pure question of law exception and counters that because there is a mixed question of law and fact the trial court should have jurisdiction under the doctrine of primary jurisdiction, which was addressed by our supreme court in *Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641 (Ind.1995). Moreover, Sun Life contends that *Austin Lakes* overrules the cases relied upon by the Association and

dictates a different result.[4]

In *Austin Lakes*, a developer sued Avon Utilities for breach of contract and fraud for representations it made to the developer regarding the availability of sewage service for a residential subdivision. After Avon Utilities assured the developer that it could provide sewage service to the residential subdivision it was planning, the Indiana Department of Environmental Management ("IDEM") informed the developer that its construction permit was denied because of serious waste treatment noncompliance by Avon Utilities. After additional assurances from Avon Utilities that it had rectified the situation, the developer secured lines of credit to continue with development. Because Avon Utilities had not brought itself into compliance as it represented to the developer, the developer was limited to only forty-one hook-ups instead of the desired 238. The developer did not appeal IDEM's denial of its construction with the agency, but instead the developer sued Avon Utilities under several theories including breach of contract and fraud. Avon Utilities filed a motion to dismiss the lawsuit for lack of subject matter jurisdiction because the developer had not exhausted its administrative remedies with IDEM and the Indiana Utility Regulatory Commission ("IURC"), which the trial court granted. The developer appealed, and a panel of this Court ruled that the trial court had subject matter jurisdiction over the case but that certain issues in the case needed to be resolved by the IURC, essentially invoking the doctrine of primary jurisdiction. The supreme court granted transfer and issued an opinion in which it distinguished the exhaustion doctrine from the doctrine of primary jurisdiction.

*Austin Lakes* explained:

The doctrines of primary jurisdiction and exhaustion of remedies ... are related but significantly different. The doctrine of primary jurisdiction is not ... jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate.

*Id.* at 645. The court additionally noted:

The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action of the likes of the instant action and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

*Id.* (citing *Uniroyal, Inc. v. Marshall,* 579 F.2d 1060, 1064 (7th Cir.1978)). Thereafter, the court described the doctrine of

---

**4.** Contrary to this contention, we find that *Austin Lakes* merely disapproved of a categorical approach used in *Indiana Utility Regulatory Commission v. Gary Joint Venture,* 609 N.E.2d 7 (Ind.Ct.App.1993), *reh'g denied, trans. denied,* according to which "if *any* issue or claim is within the jurisdiction of an administrative body, then the whole case falls within that body's jurisdiction, even if the agency is unable to grant all of the remedies sought." *Austin Lakes,* 648 N.E.2d at 646. *Paynter,* one of the cases relied upon by the Association that we find particularly persuasive, does not employ this categorical approach; nor is it one of the cases explicitly disapproved of by our supreme court in *Austin Lakes.*

primary jurisdiction as "an invention of the United States Supreme Court to deal with the problem that arises when the courts and an agency both have claims to jurisdiction of an issue in a case that has come before a court." *Id.* (citing *Tex. & Pac. Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)). The court then set forth:

> The doctrine [of primary jurisdiction] comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [an] administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

> No fixed formula exists for applying the doctrine of primary jurisdiction, but "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

*Id.* (citing *Hansen v. Norfolk & W. Ry. Co.,* 689 F.2d 707, 710 (7th Cir.1982)). After defining the two doctrines, our supreme court then explained:

> [I]n order to determine whether a case is properly before the trial court, the court should examine each issue presented by the case. If at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory agency determination. Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the jurisdiction of an administrative or regulatory agency.

*Id.* at 646. Further, *Austin Lakes* commented on referring issues to an administrative agency under the doctrine of primary jurisdiction:

> [W]e make several observations on the subject of "referral" in cases where the doctrine is properly invoked. The United States Supreme Court [in *Reiter v. Cooper,* 507 U.S. 258, 268 n. 3, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993),] recently said, in effect, that referral is a misnomer and that what is required is for the plaintiff to take the issue formally before the appropriate agency. A second approach to referral has the trial court certify a question to the appropriate agency. A third approach has the trial court request an amicus brief from the appropriate agency. We believe the approach taken by the United States Supreme Court in *Reiter* will usually be required, although requesting an amicus brief from an agency may help expedite litigation where referral is not required under Part II–B–1, supra.

*Id.* (internal citations and footnote omitted).

Nonetheless, the supreme court ultimately determined that the doctrine of primary jurisdiction did not apply to the circumstances found in *Austin Lakes* because the breach of contract and fraud claims were matters for judicial determination and there were no issues presented that were within the jurisdiction of the administrative or regulatory agencies. *Id.* at 649. Consequently, it ruled that the

trial court had subject matter jurisdiction. *Id.*

■ Here, we are presented with the converse situation. The only issue raised by Sun Life in this appeal is whether it is a member of the Association, which is an issue that is within the jurisdiction of the Association. As explained in *Austin Lakes,* the doctrine of primary jurisdiction applies only when there is at least one issue before the court that is a matter of judicial determination. *See id.* Stated otherwise, the trial court has to have subject matter jurisdiction over at least one claim before it can exercise jurisdiction and refer claims to an agency under the doctrine of primary jurisdiction. As the only issue before us is whether Sun Life is a member and as we have already decided Sun Life's status as a member is an issue that must initially be resolved by the administrative agency, we cannot say that the trial court abused its discretion by failing to exercise subject matter jurisdiction over Sun Life's claim under the auspices of the doctrine of primary jurisdiction. *See also Town Bd. of Orland v. Greenfield Mills, Inc.,* 663 N.E.2d 523, 528 (1996) (holding that, where the plaintiffs failed to exhaust their administrative remedies and sought only equitable relief, the trial court had no jurisdiction to entertain a petition for an injunction against a permit being issued for the construction of a sewage treatment project because the legislature entrusted permitting determinations to IDEM).

Finally, we note that our decision in this case is consistent with the long-standing public policy regarding exhaustion of administrative remedies. This case emphasizes the need for an adequate record for judicial review, developed and initially ruled on by an agency with specialized expertise, in a uniform and consistent manner so as not to jeopardize the validity of a system that provides medical insurance benefits for many Hoosiers.

Because Sun Life failed to pursue its administrative remedies before seeking judicial review, we find that the trial court correctly determined that it did not have subject matter jurisdiction and properly dismissed Sun Life's complaint.

Affirmed.

SHARPNACK, J., and MAY, J., concur.