**Michael O. RHINES, Appellant–Defendant,**

v.

**NORLARCO CREDIT UNION, Appellee–Plaintiff.**

No. 25A03–0506–CV–275.

Court of Appeals of Indiana.

May 15, 2006.

Rehearing Denied July 12, 2006.

Michael O. Rhines, Rochester, Pro Se Appellant.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Michael O. Rhines ("Rhines"), pro se, appeals the trial court's grant of summary judgment in favor of Norlarco Credit Union ("Norlarco"). We conclude that the

trial court had subject matter jurisdiction because there was no administrative remedy for Norlarco to pursue and that Rhines' due process rights were not violated because he had a hearing before his vehicle was repossessed for nonpayment. We also conclude that because Rhines filed a separate lawsuit for alleged violations of the Fair Debt Collection Practices Act and did not make such a counterclaim here, he was not entitled to a hearing in this cause to address any such violations. Finally, we conclude that Rhines was not entitled to have his non-attorney friend act as his advocate at the summary judgment hearing. We therefore affirm the trial court.[1]

### Facts and Procedural History

In July 2000, Michael and Pamela Rhines purchased a truck from a Chevrolet dealership in Denver, Colorado. The Rhineses executed a Credit Sale Contract and Security Agreement ("the Note"), which was thereafter assigned to Norlarco. The Note provided that the principal amount financed was $10,679.75 and that the interest rate was 17.9%. The Note also provided that the Rhineses were required to make monthly payments in the amount of $272.60 for a period of sixty months. The Note included a security agreement, which made the vehicle collateral for the loan.

The Rhineses eventually moved to Indiana and divorced. As part of the divorce, Rhines was awarded the vehicle, and he was ordered to make the monthly payments on it. Rhines made his last payment on August 5, 2003. In April 2004, Norlarco filed a Complaint against the Rhineses seeking a money judgment, replevin of the vehicle, and a writ of assistance from the sheriff to assist in removing

1. We hereby deny the motions Rhines has filed before this Court entitled "Appellant's Motion for Express Determination of Federal Question on the Merits" and "Appellant's Verified Motion to Dismiss for Lack of Subject Matter Jurisdiction" because we are addressing the issues raised in these motions in this opinion.

the vehicle from Rhines' possession. A default judgment was subsequently entered against Pamela only. In February 2005, Norlarco filed a motion for summary judgment against Rhines, who was representing himself throughout these proceedings.[2] Following a hearing, the trial court entered summary judgment in favor of Norlarco. Rhines, pro se, now appeals.

### Discussion and Decision

We first observe that this case involves the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* We therefore provide some background information on the FDCPA before addressing the issues presented in this case.

In enacting the FDCPA, Congress stated its findings and declared the purposes of the act as follows:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

\* \* \* \* \*

■ (e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692 (subtitles omitted). "The FDCPA is a broad statute that was designed to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Spears v. Brennan,* 745 N.E.2d 862, 870 (Ind.Ct.App.2001) (quotation omitted), *reh'g denied.*

Rhines raises numerous issues in this appeal, which we consolidate and restate as follows.[3] First, he contends that the trial court did not have subject matter jurisdiction. Second, Rhines contends that he was entitled to a hearing before his vehicle was repossessed. Third, he contends that he was entitled to have his non-attorney friend act as his advocate at the summary judgment hearing. Last, Rhines contends that the trial court erred in granting summary judgment in favor of Norlarco. We analyze each issue in turn.

### I. Subject Matter Jurisdiction

■ Rhines first contends that the trial court did not have subject matter jurisdiction because Norlarco "failed to exhaust its administrative remedies." Appellant's Br. p. 12. Subject matter jurisdiction refers to the power of courts to hear and decide a particular class of cases.

---

**2.** Before Norlarco filed its motion for summary judgment against Rhines, Rhines filed numerous pro se motions in the trial court, including a motion to dismiss for failure of Norlarco to exhaust its administrative remedies. Rhines appealed the denial of his motion to dismiss to this Court, and we affirmed because it was a permissive interlocutory order for which Rhines failed to seek certifica-tion. *Rhines v. Norlarco,* No. 25A05–0509–CV–520 (Ind.Ct.App. Feb. 9, 2005). Our Supreme Court then denied Rhines' petition to transfer.

**3.** We commend counsel for Norlarco on his good brief, which has helped identify the issues and apply the law in this case.

*State Bd. of Tax Comm'rs v. Ispat Inland, Inc.,* 784 N.E.2d 477, 480 (Ind.2003); *Kondamuri v. Kondamuri,* 799 N.E.2d 1153, 1156 (Ind.Ct.App.2003), *trans. denied.* The issue of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by the Indiana Constitution or by statute. *Kondamuri,* 799 N.E.2d at 1156. When courts lack subject matter jurisdiction, their actions are void *ab initio* and may be attacked at any time. *Id.*

■■■■ Failure to exhaust administrative remedies deprives trial courts of subject matter jurisdiction. *Johnson v. Celebration Fireworks, Inc.,* 829 N.E.2d 979, 984 (Ind.2005). That is, an administrative remedy, where one is available, must be pursued before a claimant is allowed access to the courts. *Sun Life Assurance Co. of Canada v. Ind. Comprehensive Health Ins. Ass'n,* 827 N.E.2d 1206, 1209 (Ind.Ct.App.2005), *trans. denied.* If the facts before the trial court are undisputed, then an issue of subject matter jurisdiction presents a pure question of law and is reviewed *de novo. M–Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n,* 809 N.E.2d 834, 837 (Ind.2004).

Here, Rhines claims that Norlarco had an administrative remedy through the FDCPA, and because it failed to pursue that remedy, the trial court lacked subject matter jurisdiction. This is incorrect. The FDCPA is a statute designed to protect *consumers* from a host of unfair, harassing, and deceptive debt collection practices. *Spears,* 745 N.E.2d at 870. The FDCPA does not provide an administrative remedy to debt collectors. Rather, the FDCPA provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of [the act] is liable to such person in an amount equal to the sum of—

> (1) any actual damage sustained by such person as a result of such failure;

> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

>  . . . .

15 U.S.C. § 1692k(a). As for jurisdiction, the FDCPA provides:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

*Id.* at (d). Because the FDCPA contemplates that an action will be brought in court and because there was no administrative remedy for Norlarco to pursue, the trial court had subject matter jurisdiction.

## II. Pre–Deprivation Hearing

■■■■ Rhines next contends that pursuant to the Fourteenth Amendment of the United States Constitution, he was entitled to a hearing before his vehicle was repossessed. The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Due process generally requires notice and an opportunity to be heard. *See Hall v. Terry,* 837 N.E.2d 1095, 1099 (Ind.Ct.App. 2005). Assuming without deciding that the United States Constitution required a predeprivation hearing under the facts of this case, we point out that Rhines, in fact, had a hearing before the trial court issued its replevin order. Specifically, Norlarco filed a complaint against Rhines seeking, among other things, replevin of the vehicle. Rhines was given notice of the suit. Norlarco then filed a motion for summary

judgment against Rhines, and a hearing was held, at which Rhines appeared and was able to present his version of the case. Accordingly, Rhines received a hearing before the trial court issued its replevin order. There is no error on this issue.

Though difficult to decipher, it appears that Rhines also argues that he was entitled to a hearing under the FDCPA, at which it should have been determined whether Norlarco's attorney, Timothy O'Connor, complied with the requirements of the FDCPA. We note that a FDCPA claim "has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt." *Spears*, 745 N.E.2d at 877 (quotation omitted). Accordingly, a debtor has two options: (1) the debtor can make a counterclaim in the debt collection proceeding that the debt collector violated the FDCPA *or* (2) the debtor can file a separate lawsuit against the debt collector for violation of the FDCPA. *See id.*

Here, Rhines apparently chose the latter, as Rhines filed a lawsuit against O'Connor for violation of the FDCPA that is currently pending in the United States District Court for the Northern District of Indiana. *See Rhines v. O'Connor*, No. 3:05 CV 200, 2005 WL 2885700 (N.D.Ind. 2005). Although Rhines filed a counterclaim in this case, it had nothing to do with the FDCPA. *See* Appellee's App. p. 11. Because Rhines did not make a counterclaim in this case pursuant to the FDCPA and because Rhines is pursuing his FDCPA rights in federal court, the trial court was not required to hold a hearing in this case to address any alleged violations of the FDCPA. There is no error on this issue as well.

## III. Right to Advocacy from Non–Attorney

Rhines next contends that he had the right to have his non-attorney friend act as his advocate at the summary judgment hearing and that "the trial court's restraint on that association is an invalid restraint on [his] protected liberty interest in having [his friend] operate or speak as his agent." Appellant's Br. p. 27.

It is well settled that "[t]here is no constitutional right to representation by lay counsel"; that is, a party does not have the right to have a non-attorney represent him. *Terpstra v. Farmers & Merchants Bank*, 483 N.E.2d 749, 760 (Ind.Ct. App.1985) (quotation omitted), *reh'g denied, trans. denied.* "Any other rule would in effect put this court in the position of sponsoring the unauthorized practice of law." *Id.* (quotation omitted). It is a crime for a non-lawyer to engage in the practice of law. *Id.; see also* Ind.Code § 33–43–2–1. There are compelling reasons for restricting the practice of law to licensed attorneys. The Indiana Supreme Court recently stated:

This Court's authority to set standards for and to supervise the practice of law emanates from the need to protect the public from those who are not properly licensed or otherwise qualified to act as attorneys. The practice of law without a license is not a "victimless crime" because the legal interests of people assisted by those who are not qualified to act as attorneys can be irreparably damaged.

*State ex rel. Ind. State Bar Ass'n v. Diaz*, 838 N.E.2d 433, 443 (Ind.2005).

At the summary judgment hearing in this case, Rhines appeared with his friend, Pete Terpstra. After the trial judge took the bench and introduced the case, the following colloquy occurred:

THE COURT: Mr. O'Connor, are you ready to proceed on this matter?

MR. O'CONNOR: Yes your Honor.

MR. TERPSTRA: Your Honor?

THE COURT: Mr. Rhines, are you ready to proceed?

MR. RHINES: I have a question.

MR. TERPSTRA: Your Honor, we have some administrative procedural matters we'd like to . . .

THE COURT: And you are?

MR. TERPSTRA: My name is Pete Terpstra.

THE COURT: Okay. Mr. . . . . .

MR. TERPSTRA: I'm . . . .

THE COURT: . . . Terpstra . . . .

MR. TERPSTRA: . . . I'm the friend of Mr. Rhines.

THE COURT: Okay.

MR. TERPSTRA: Mr. Rhines . . . .

THE COURT: Well, you're gonna have to sit down because this is between the Plaintiff and Mr. Rhines, unless you're licensed to practice law, you're not gonna represent Mr. Rhines.

MR. TERPSTRA: I'm not representing Mr. Rhines.

THE COURT: Okay. Then have a seat there, please.

MR. TERPSTRA: Okay.

THE COURT: Mr. Rhines, are you ready to proceed?

MR. RHINES: Yes sir.

THE COURT: Okay, go ahead.

MR. TERPSTRA: Read that.

MR. RHINES: Okay.

Appellant's App. p. 110–11 (formatting altered). On appeal, Rhines explains:

Rhines entered into an association with Terpstra for the express purpose of vindicating protected rights and the vigorous advocacy of those rights in the court room. Rhines has no legal training and cannot afford an attorney to represent himself. Further, he does not qualify for any legal aid programs. Either Rhines must forego any assertion of rights or enter into an association with someone who will champion his cause pro bono.

Terpstra, as Rhines [sic] next friend and agent, agreed to help him write motions, research law cases, make appeals, and speak for him in the trial court at any hearing or jury trial. Rhines' and Terpstra's association was based upon friendship and Terpstra had no property or liability interest in the outcome of Rhines' litigation.

\* \* \* \* \*

Rhines was relying upon Terpstra to help him take the stand and testify to the facts and issues necessary to defend a summary judgment action by the Plaintiff. Rhines had entrusted the order and management of his defense upon Terpstra's presence and assistance.

Appellant's Br. p. 29.

It is true that our Supreme Court "has not attempted to provide a comprehensive definition of what constitutes the practice of law because the infinite variety of fact situations each must be judged according to its own specific circumstances." *Diaz*, 838 N.E.2d at 443–44. However,

[a]lthough there may be a "twilight zone" between those acts that are and those that are not permissible for persons who are not lawyers, it is clear the core element of practicing law is the giving of legal advice to a client. In fact, merely entering into such relationship constitutes the practice of law. The practice of law includes making it one's business to act for others in legal formalities, negotiations, or proceedings.

*Id.* at 444 (internal citations omitted). Pursuant to *Diaz*, it is apparent that Terpstra, a non-attorney, was attempting to practice law here, and we strongly caution against such activities. Terpstra entered into an agreement with Rhines to act as his advocate and was prepared to act on Rhines' behalf at the summary judgment hearing. In fact, Terpstra started the hearing by telling the trial judge that he would like to address some "administrative procedural matters." A trial judge has control over the proceedings in his court, and his duty is to conduct business expeditiously consistent with orderly procedure and the administration of justice. *Terpstra*, 483 N.E.2d at 761. Matters that relate to the orderly conduct of trial not regulated by precise statute or rule are within the sound discretion of the court, and we will reverse only for an abuse of that discretion. *Id.* The trial court did not abuse its discretion in refusing to allow Terpstra to act on behalf of Rhines at the summary judgment hearing.

### IV. Summary Judgment

■ Last, Rhines contends that the trial court erred in entering summary judgment in favor of Norlarco. When reviewing the propriety of a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 160 (Ind.2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see also Sees*, 839 N.E.2d at 160. The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Sees*, 839 N.E.2d at 160. The court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. *Sees*, 839 N.E.2d at 160. A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *Spears*, 745 N.E.2d at 869.

The gravamen of Norlarco's complaint is that Rhines received a loan to purchase a vehicle, that he executed a Credit Sale Contract and Security Agreement at the time of the loan, and that he defaulted on the loan by failing to make the payments as required. The record shows that Norlarco designated several pieces of evidence to support its motion for summary judgment. Specifically, Norlarco designated the Note that Rhines executed, which set forth the terms of the loan, an Affidavit of Debt from its servicing agent Centrix Finance, which provided that Rhines' debt totaled $11,973.44, and an affidavit from O'Connor, which set forth the attorney fees that were included in the debt total. Norlarco also designated a portion of Rhines' pro se brief in the appeal that this Court dismissed as being premature. In that brief, Rhines himself wrote:

> On or about July 11, 2000, the appellant-defendant, Michael O. Rhines and his wife purchased a truck from Luby Chevrolet in Denver, Colorado. They both executed a sales credit agreement in the amount of $10,700.00 and began making payments. The sales credit agreement was assigned to the appellee-plaintiff, Norlarco Credit. Rhines made payments to Norlarco's servicing agent, Centrix Finance.

> Subsequently, Rhines moved to northern Indiana with his wife. They divorced. In the divorce agreement, Rhines was granted possession of the truck, but his wife was still responsible for making payments if Rhines defaulted.

Several months prior to February 26, 2004, Rhines fell in arrears on his payments to Norlarco Credit.

Appellant's App. p. 53 (subtitles omitted).

Despite this overwhelming evidence that Rhines defaulted on his vehicle loan, Rhines filed a "Verified Motion in Objection to Plaintiff's Motion for Summary Judgment"; however, Rhines did not designate any evidence in support of his motion as required by Trial Rule 56. Rather, Rhines argued in the motion that he "provided all the money to fund the alleged loan." Appellant's App. p. 63. Specifically, Rhines claimed that Norlarco "sold the note," "deposited the proceeds," and "then withdrew the money and returned it to [him] as a loan." *Id.* Consequently, Rhines alleged that "[Norlarco] owes [him] for money accepted from [him] to fund the alleged loan." *Id.* at 64. Rhines did not support any of these allegations with evidence. Rather, they were bald assertions, which is not enough to withstand summary judgment. Because the designated evidence reveals that Rhines purchased a vehicle from a dealership, executed a Credit Sale Contract and Security Agreement, which was assigned to Norlarco, and subsequently stopped making payments on that loan, Norlarco has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. We therefore affirm the trial court's grant of summary judgment in favor of Norlarco.

Affirmed.

ROBB, J., and MATHIAS, J., concur.