


FILED

Aug 16 2024, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Mercer Belanger Professional Corporation,

*Appellant-Defendant*

v.

Edward Gaeta,

*Appellee-Plaintiff*

---

August 16, 2024

Court of Appeals Case No.
23A-CT-1351

Appeal from the Tippecanoe Circuit Court

The Honorable Sean M. Persin, Judge

Trial Court Cause No.
79C01-1607-CT-110

---

**Opinion by Judge Crone**
Judges Bailey and Pyle concur.

**Crone, Judge.**

## Case Summary

[1] Edward Gaeta filed a complaint against Mercer Belanger Professional Corporation (Mercer), alleging that it violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. Section 1692. Both parties moved for summary judgment. The trial court granted the motions in part and denied them in part. A jury assessed actual and statutory damages for Gaeta. Thereafter, the trial court awarded additional fees and expenses. Mercer appeals. We affirm.

## Facts and Procedural History

[2] In order to address Mercer's appeal of Gaeta's FDCPA claim, we must first summarize related litigation. In September 2008, Gaeta executed a promissory note payable to The Huntington National Bank (Huntington) in the principal amount of $78,859.[1] The loan was secured via a mortgage against his Lafayette residence. The loan was insured by the Federal Housing Administration (FHA), thereby subjecting the note and mortgage to federal Department of Housing and Urban Development (HUD) regulations.

[3] Gaeta failed to make a timely payment and instead made sporadic payments for the next few months. By June 2009, Gaeta was three months behind in his payments, which triggered federal regulations that required Huntington to

---

[1] Additional background may be found in *Gaeta v. Huntington National Bank*, 164 N.E.3d 782, 784-86 (Ind. Ct. App. 2021) (*Gaeta II*), and *Gaeta v. Huntington National Bank*, No. 18A-MF-408, 2019 WL 2571993, at *1-5 (Ind. Ct. App. June 24, 2019) (*Gaeta I*).

engage in certain steps. *See* 24 C.F.R. § 203.604(b) (requiring lender to seek a face-to-face meeting with mortgagor "before three full monthly installments due on the mortgage are unpaid" on an FHA loan). Huntington did not attempt a face-to-face meeting but instead spoke with Gaeta about a repayment plan. Gaeta made one payment, enlisted in the United States Marines Corps in August 2009, rented out the property, made sporadic payments thereafter, but never paid enough to bring the loan current. While Gaeta was in the Marines, Huntington took no steps to accelerate the loan or foreclose on the mortgage.

[4] In September 2014, after his active service in the Marines ended, Gaeta began living at the residence again but did not make consistent payments. In August 2015, Huntington mailed Gaeta a Notice of Intention to Accelerate and Foreclose, informing Gaeta of his default and giving him an opportunity to cure but not offering a face-to-face meeting. *See Gaeta I*, 2019 WL 2571993 at *3. In October 2015, on behalf of Huntington, Mercer, a debt collector per the FDCPA, mailed a "Fair Debt dunning letter" to Gaeta. Appellant's App. Vol. 2 at 55. In November 2015, Mercer filed a complaint on note and to foreclose mortgage in Tippecanoe Circuit Court under cause number 79C01-1511-MF-228 (first foreclosure action). Appellant's App. Vol. 3 at 85. Paragraph 12 of the complaint stated: "Plaintiff is entitled to Decree of Foreclosure pursuant to I.C. Section 32-30-10-3." *Id.* at 87.

[5] In February 2016, Gaeta filed a motion to dismiss, citing 24 C.F.R. Section 203.604 and notifying Mercer of Huntington's failed obligations to provide a face-to-face meeting. That same month, more than six years after Gaeta first fell

more than three months behind in his mortgage payments, Huntington sent a letter to him offering the opportunity for a face-to-face meeting. Three times, Huntington employees attempted to visit Gaeta to meet face to face, but he was not at home. Huntington filed, and the trial court granted, a motion to dismiss the first foreclosure action without prejudice. *Id*. at 48.

[6] In March 2016, Gaeta telephoned Huntington and requested a face-to-face meeting. A Huntington employee told Gaeta how to contact a local branch to schedule a meeting to complete a loss-mitigation packet. Gaeta neither requested a loan-mitigation packet nor visited a Huntington branch. In April 2016, again on behalf of Huntington, Mercer filed in Tippecanoe County Court a second complaint on the note and to foreclose the mortgage under cause number 79C01-1604-MF-97 (second foreclosure action). The second foreclosure action stated that Huntington "is entitled to a Decree of Foreclosure" pursuant to statute and the terms of the mortgage. *Id.* at 115.

[7] In July 2016, Gaeta filed an answer asserting eighteen affirmative defenses, including the failure to comply with the face-to-face requirement of 24 C.F.R. Section 203.604. Thereafter, Huntington filed a summary judgment motion, and in late 2017, a bench trial was held. In its December 2017 findings of fact and conclusions thereon, the trial court found that Gaeta was in default and concluded that the evidence sufficiently established that "the 24 CFR § 203.604 face-to-face interview was not required, and that Huntington complied with its requirements. Further, even if the face-to-face interview was otherwise required, Huntington offered one and Gaeta, by his actions, refused." *Gaeta I*, 2019 WL

2571993 at *5. The trial court's order included a money judgment in favor of Huntington, a decree foreclosing the mortgage, and an order to sell the residence. Gaeta appealed. In our 2019 decision, we concluded "that the evidence clearly shows that Huntington did not comply with the federal regulations, which are a condition precedent to it seeking foreclosure on the mortgage at issue[.]" *Id.* at *1. Therefore, we reversed "the judgment of the trial court to the extent that it granted Huntington's request to foreclose on the mortgage" yet affirmed the "trial court's money judgment in favor of Huntington on the unpaid balance of the Loan." *Id.* at *11.

[8] In an order on remand in December 2019, the trial court set aside the foreclosure judgment and retained the money judgment against Gaeta. Gaeta appealed the trial court's new order, arguing that the trial court abused its discretion by failing to remove attorney fees and expenses, which had been included in the original money judgment. In our February 2021 opinion, we recounted *Gaeta I*'s holding that affirmed the money judgment in favor of Huntington based on Gaeta's failure to pay, applied the law of the case, concluded that Huntington was "entitled to the entirety of the money judgment," and affirmed. *Gaeta II*, 164 N.E.3d at 787. Thereafter, Mercer filed a praecipe for writ of execution to collect Huntington's money judgment. Appellant's App. Vol. 2 at 18. By April 2021, Gaeta's residence was sold by sheriff's sale for $133,051.28. Tr. Vol. 3 at 14. The trial court ordered a distribution of proceeds to Huntington in August, and Huntington filed a satisfaction of judgment in November 2021.

[9] With that background in mind, we circle back to July 2016, when Gaeta filed in Tippecanoe Circuit Court the present action against Mercer under cause number 79C01-1607-CT-110 (the present FDCPA action). Gaeta's complaint alleged that Mercer pursued foreclosure despite knowing that its client, Huntington, had refused to comply with applicable federal requirements. Specifically, Gaeta alleged violations of 15 U.S.C. Sections 1692f (unfair or unconscionable attempt to collect a debt), 1692e (false and misleading representations in connection with debt collection), 1692c (improper communications with party represented by counsel), and 1692g (improper disclosures in Mercer's initial communication). In August 2016, Mercer removed the case to the United States District Court for the Northern District of Indiana, where it was assigned cause number 4:16-cv-58-JEM (the federal FDCPA action).

[10] In February 2019, Gaeta filed a motion to stay the federal FDCPA action while the second foreclosure action wound its way through the state appellate process. The district court granted the stay and then, in March 2021, lifted it. In May 2021, Mercer filed a motion for summary judgment, and Gaeta filed a motion for partial summary judgment. The parties filed responses and reply briefs.

[11] In August 2021, the district court entered an order granting summary judgment as to the 1692f and 1692e claims, taking under advisement Mercer's motion with respect to the other claims, taking under advisement Gaeta's partial summary judgment motion, granting oral argument, and setting the matter for a hearing "on the issue of standing with respect to" the 1692c and 1692g claims.

Appellant's App. Vol. 2 at 42-43, 226-27. Thereafter, the district court ordered additional briefing. Gaeta moved the district court to reconsider its order on the motion for summary judgment and requested that he be relieved from briefing standing or jurisdiction, that the case be remanded to state court, and that Mercer be ordered to pay Gaeta's attorney fees. Responses and replies were filed. An October 2021 district court order provided:

> [T]he Court hereby **ORDERS** that this case is **REMANDED** to Tippecanoe County Circuit Court under cause number 79C01-1607-CT-110 [the present FDCPA action]. The Court **DENIES as moot** Plaintiff's Motion for Reconsideration of the Court's Summary Judgment Opinion [110]-[110-1][DE 112], Plaintiff's Motion for Reconsideration of the Court's Order for Plaintiff to Brief Standing [111] [DE 114] because *this Court does not have jurisdiction over these claims*, and **DENIES** Plaintiff's request for attorney fees and the Request for Hearing [DE 122] to address fees.

*Id.* at 40 (italicized emphasis added). Accordingly, the present FDCPA action returned to the Tippecanoe Circuit Court.

[12] In March 2022, in the trial court, Mercer moved for summary judgment, challenging Gaeta's standing, asserting that the district court found that Gaeta suffered no injury, and contending that the district court's prior ruling was "res judicata" and "binding as law of the case." Appellant's Br. at 14; Appellant's App. Vol. 3 at 11. Gaeta filed a response and a cross-motion for summary judgment. Gaeta's designated evidence included *Gaeta I* (outlining Gaeta's payment history and Huntington's failure to comply with the FHA face-to-face

condition precedent), email communications between Huntington and Mercer wherein Huntington indicated its noncompliance and request to dismiss, Mercer's deposition testimony that it had no procedures in place to avoid attempting to foreclose on debtors when a client had not complied with FHA conditions precedent, and Gaeta's affidavit explaining his actions and summarizing how Mercer's actions negatively affected him. Appellant's App. Vol. 3 at 181-85, 172, 189-90.

[13] Following a hearing, the trial court issued a six-page order in August 2022. The order included the following conclusions:

> 28. … [T]he U.S. District Court did *not* have jurisdiction over Gaeta's claims and the Amended Opinion and Order entered on August 10, 2021 is not binding on this court. The U.S. District Court could have simply denied Gaeta's Motion to Reconsider, but instead denied it "**as moot**" because the court lacked jurisdiction. (bold text added by the U.S. District Court) The U.S. District Court even explained that it "did not have jurisdiction to address the arguments in the motion for reconsideration." Res judicata cannot apply where there is no final order. Conversely, the order denying an award of attorney's fees and costs *incurred as a result of removal to federal court* is binding. This court does not disrupt the U.S. District Court's conclusion that Mercer had an objectively reasonable basis for removal.

> 29. The constraints of Article III do not apply to state courts, and standing analysis under federal law is not same as the analysis under Indiana law. In Indiana, standing can be conferred by statute. Under the FDCPA, an individual may seek statutory damages up to $1,000.00 and attorney's fees *in addition to* any actual damages sustained for violations under Section 1692k. In

other words, Gaeta does not have to allege or prove actual damages in order to move forward. Regardless, Gaeta alleges that each of the alleged FDCPA violations caused him to incur unnecessary attorney's fees.

30. Summary judgment may be rendered as to all or some of the issues or claims before the Court when "the designated evidentiary matter shows that there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Here, there are few issues of fact. Instead, the parties dispute whether Mercer violated various provisions of the FDCPA, and if so, whether damages should be awarded as a result.

31. Mercer did not impermissibly fail to cease all collection efforts during the thirty-day dispute period by filing the second foreclosure suit under Section l692[g[2]]. Creditors have the right to initiate suit during the validation period, which is not a grace period. *Zemeckis v. Glob. Credit Collection Corp*, 679 F.3d 632, 636 (7th Cir. 2012); *see also Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 416 (7th Cir. 2005). The Court grants Mercer's Motion for Summary Judgment in this regard.

32. Mercer's dunning letter was not misleading for failing to mention that Mercer might file a new lawsuit during the thirty-day dispute period under Section 1692[g]. *See Zemeckis*, *supra*, at p. 636-7 (even if the dunning letter had gone so far as to mention the creditor had the right to initiate a lawsuit during the validation period, this information would not have risen to a

---

[2] The order references Section 1692f(1) here, but Mercer notes that this "appears to be a scrivener's error because § 1692g of the FDCPA addresses the 30-day validation window." Appellant's Br. at 15 n.3.

violation of Section 1692g(b)). The Court grants Mercer's Motion for Summary Judgment in this regard.

33. Mercer's dunning letter was not an unfair or unconscionable attempt to collect a debt it was not expressly authorized to collect under Section 1692f. The Court of Appeals clarified that the bank was permitted to seek a money judgment on the loan, even though it could not obtain foreclosure. *Gaeta v. Huntington Nat'l Bank*, 129 N.E.3d 825 *25 (Ind. Ct. App. 2019). The letter does not mention foreclosure. Instead, Mercer informs Gaeta that the bank accellerated [sic] the loan and demanded payment of $83,437.56. The Court grants Mercer's Motion for Summary Judgment in this regard.

34. Mercer's dunning letter was not an unlawful attempt to communicate with a consumer they knew was represented by counsel under Section 1692c. Mercer affirmatively reached out to Attorney Keller and asked whether he would accept service if a new referral was made, and it is undisputed that he told them he would *not* accept service. Mercer had no choice but to send the letter to Gaeta. Granted, the better practice would have been to also send a courtesy copy to Attorney Keller, but the failure to do so is not unlawful or unethical under the circumstances[.] Gaeta promptly delivered the letter to Attorney Keller, who responded within the dispute period, and all future communications were made with Attorney Keller. The Court grants Mercer's Motion for Summary Judgment in this regard.

35. Mercer did not unlawfully collect attorney's fees under Section 1692f. The award of attorney's fees has now been affirmed by the Indiana Court of Appeals, *twice.* Gaeta simply cannot prevail on his argument that it was unlawful for Mercer to try to collect these fees, as this issue has been decided. The Court grants Mercer's Motion for Summary Judgment in this regard.

36. Mercer unlawfully pursued foreclosure against Gaeta for years, knowing full well that the bank had not complied with the requirements of 24 C.F.R. § 203.604, which violates Section 1692e(2)(A) (falsely representing that foreclosure was permitted by law), Section 1692e(5) (threatening to foreclose when foreclosure was not permitted by law), and Section 1692f (attempting to foreclosure [sic] when not permitted by law).

Lawsuits attempting to take action that is not permitted by law is both unfair and misleading. *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1133 (9th Cir. 2021). As the Indiana Court of Appeals explained, it was "undisputed" and "abundantly clear" that Huntington did not attempt a face-to-face meeting with Gaeta before he was three full monthly installments behind in payments. *Gaeta v. Huntington Nat'l Bank*, 129 N.E.3d 825 *15, 18 (Ind. Ct. App. 2019). An[d] yet somehow, Mercer waives [sic] around the appellate decision as a win. Certainly, it allowed them to collect on the loan, but it also clarified that Mercer's action to foreclose was not permitted by law.

There is no evidence of a bona fide error. The Court grants Gaeta's Motion for Summary Judgment in this regard.

All other motions for summary judgment not addressed above are hereby denied.

Aug. 3, 2022 Order at 4-6.

[14]     Toward the end of 2022, a three-day trial was held to determine what amount of damages resulted from Mercer's violations of the FDCPA. The jury heard testimony about Gaeta's hardworking nature, family circumstances, employment, and service history. They also heard how the foreclosure proceedings began, the steps taken to alert Mercer of Huntington's failed

obligations, Gaeta's mitigation efforts, and the repercussions of the foreclosure proceedings on Gaeta's work, relationships, mental health, and finances. A jury assessed $331,000 damages for Gaeta against Mercer, delineating $330,000 in actual damages and $1,000 for statutory damages. Thereafter, the trial court permitted post-trial briefing and a bench trial regarding various additional fees and expenses. In May 2023, the trial court issued its final judgment in favor of Gaeta and against Mercer in the amount of $463,130.81, including the original $331,000 plus $132,130.81 for attorney fees,[3] paralegal fees, expenses, and foreclosure defense attorney fees. Mercer appeals.

## Discussion and Decision

### Section 1 – The trial court did not err in granting partial summary judgment as to liability in favor of Gaeta.

Mercer challenges the trial court's granting of partial summary judgment for Gaeta and requests a remand for entry of summary judgment in its favor. Our summary judgment standard of review is well established:

> We review a summary judgment ruling de novo, applying the same standard as the trial court. The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the

---

[3] The trial court denied Gaeta's counsel's motion for prejudgment interest, denied his motion for a fee enhancement, and determined a reasonable hourly rate was $350 rather than $400. *See* May 16, 2023 Order at 2.

nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. Our review is limited to those facts designated to the trial court.

*Hopkins v. Indpls. Pub. Schs.*, 183 N.E.3d 308, 312 (Ind. Ct. App. 2022) (quoting *Ind. Univ. v. Thomas*, 167 N.E.3d 724, 731 (Ind. Ct. App. 2021) (alterations, citations, and quotation marks omitted)), *trans. denied*.

[16] The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As this Court has observed, "The FDCPA is a broad statute that was designed to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Rhines v. Norlarco Credit Union*, 847 N.E.2d 233, 236 (Ind. Ct. App. 2006) (quoting *Spears v. Brennan*, 745 N.E.2d 862, 870 (Ind. Ct. App. 2001)), *trans. denied*, *cert. denied* (2007).

[17] A debt collector who "fails to comply with *any [FDCPA] provision* … with respect to any person *is liable* to such person" for "actual damage[s,]" costs, "a reasonable attorney's fee as determined by the court[,]" and statutory "additional damages[.]" 15 U.S.C. § 1692k(a) (emphases added). It is a "well-settled principle that the FDCPA is a strict liability statute and that a consumer

need not show intentional conduct by the debt collector to be entitled to damages." *Spears*, 745 N.E.2d at 877 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2nd Cir.1996), and *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2nd Cir.1993)). However, the FDCPA provides a safe haven for debt collectors:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Accordingly, "[u]nder the bona-fide-error defense, a debt collector is not liable for violating the FDCPA if it shows by a preponderance of the evidence that (1) the violation was not intentional, (2) the violation resulted from a bona fide error, and (3) it maintained procedures reasonably adapted to avoid the error." *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1154 (7th Cir. 2022) (citing *Abdollahzadeh v. Mandarich L. Grp.*, 922 F.3d 810, 815 (7th Cir. 2019)). "[A] defendant can invoke the bona fide error defense only if it claims it made an error of *fact*, not an error of law." *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 349 (7th Cir. 2018), *abrogation on other grounds recognized by Ewing*, 24 F.4th at 1152. Indeed, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id*. at 349-50 (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010)).

Stated otherwise, Section 1692k(c) does not shield violations emanating from a misinterpretation of the FDCPA. *Jerman*, 559 U.S. at 587.

[18] In its August 2022 order, the trial court granted summary judgment for Gaeta on only three of the numerous FDCPA violations that he alleged. Specifically, on page six of the order, the trial court determined that Mercer "unlawfully pursued foreclosure against Gaeta for years, knowing full well that the bank had not complied with the requirements of 24 C.F.R. § 203.604, which violate[d]" the following FDCPA sections:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: …
>
> (2) The false representation of –
>
> (A) the character, amount, or legal status of any debt[.]…
>
> (5) The *threat to take any action that cannot legally be taken* or that is not intended to be taken.

15 U.S.C. § 1692e (emphasis added).

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. § 1692f.

[19]     In disputing the trial court's August 2022 partial grant of summary judgment, Mercer focuses on its successful pursuit of what it terms a "non-frivolous" claim for a money judgment on a note. Mercer maintains that its request for relief may not be deemed violative of the FDCPA just because this Court eventually reversed the trial court's decision to permit Mercer and Huntington to execute the judgment through foreclosure of Gaeta's mortgage. Mercer asserts that it did not violate Section 1692e because its statements were not false or misleading and that it did not violate Section 1692f because its conduct during litigation was not unfair or unconscionable. *See* Appellant's Br. at 18. In addition, Mercer contends that the trial court abused its discretion under the law of the case doctrine by revisiting issues decided by the district court.

[20]     But Mercer does not dispute Section 1692e(5), which we find critical. Section 1692e(5) states that a "threat to take any action that cannot legally be taken" is a violation of the FDCPA. Here, it was "undisputed that Huntington did not attempt a face-to-face meeting with Gaeta before he was three full monthly installments behind in his payments." *Gaeta I*, 2019 WL 2571993 at *7. In 2010, we held that HUD servicing requirements are "binding conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD property." *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 863 (Ind. Ct. App. 2010). Because the face-to-face requirement is a condition precedent to the foreclosure process, and Huntington "clearly did not comply with the explicit requirements of 24 C.F.R. § 203.604[,]" foreclosure was an action that could not legally be taken. *Gaeta I*, 2019 WL 2571993 at *9.

Mercer did not merely threaten foreclosure, an action which could not be legally taken, but pursued foreclosure against Gaeta beginning in 2015 and continuing for years. Mercer did so after email communications with Huntington (designated by Gaeta) wherein Huntington indicated its noncompliance and its request to dismiss. In addition to the email exchange, Gaeta designated Mercer's deposition testimony revealing that it had no procedures in place to avoid attempting to foreclose on debtors when a client had not complied with FHA conditions precedent. Gaeta also designated his affidavit explaining his actions and summarizing how Mercer's actions negatively affected him.

[21] Given the above, we disagree with Mercer that Gaeta somehow did not make a prima facie showing that there are no genuine issues of material fact and that he was entitled to judgment as a matter of law in his FDCPA matter. To the contrary, Gaeta met his burden, and at that point, Mercer had to present evidence establishing the existence of a material fact. Mercer did not. Mercer also did not and does not raise a bona fide error argument. As such, Mercer has not convinced us that the trial court erred in granting partial summary judgment in Gaeta's favor.[4]

---

[4] Because Mercer's threat to take action that could not legally be taken was so clear, we only briefly touch upon Mercer's argument as to false statements. Unlike in *Gomez v. Cavalry Portfolio Services, LLC*, 962 F.3d 963 (7th Cir. 2020), the false statement in the present case was not a disagreement as to how to calculate the debt. Rather, the false statement concerned Huntington's entitlement to foreclosure. Again, according to designated email communications, Mercer included the statement of entitlement to foreclosure despite Mercer's knowledge at that time that Huntington had not complied with federal regulations that are a condition precedent to foreclosure entitlement. *Gomez* is not analogous. Similarly, *Miljkovic v. Shafritz &*

[22]   We next examine whether the trial court improperly re-examined the district court's decision in violation of the law of the case doctrine. "The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts." *Think Tank Software Dev. Corp. v. Chester, Inc.*, 30 N.E.3d 738, 744 (Ind. Ct. App. 2015), *trans. denied*. The purpose of the doctrine is to minimize unnecessary repeated litigation of legal issues once they have been resolved by an appellate court. *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1082 (Ind. Ct. App. 2008)*, trans. denied*. This doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Godby v. Whitehead*, 837 N.E.2d 146, 152 (Ind. Ct. App. 2005)*, trans. denied* (2006). However,

> the law of the case doctrine is a discretionary rule of practice. This doctrine expresses the practice of courts generally to refuse to reopen what has been previously decided. A court has the power to revisit prior decisions of its own or of a coordinate court

---

*Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015), does not apply. In *Miljkovic*, a debt collector disputed the debtor's right to exemption, but after additional discovery, moved to dissolve its writ. Here, Mercer initially moved to dismiss the action but then refiled despite the fact that Huntington still had not complied with the face-to-face requirement within the appropriate timeframe. We are equally unpersuaded by *Juarez v. Portfolio Recovery Associates, LLC*, No. 1:14-cv-5928, 2015 WL 4764226, at *3 (N.D. Ill. 2015), which Mercer relies on for the proposition that a "debt collector that files suit expecting in good faith to prove its claim, even if he does not ultimately prevail, will not be liable under the FDCPA." The *Juarez* court also stated: "A debt collector may make a claim in bad faith, even where a debt is indisputably owed by a debtor and owned by a debt collector, where the debt collector has falsely represented its legal right to collect a debt." *Id.* at *4. Further, "FDCPA liability may even extend to a debt collector that unintentionally makes a false representation in an attempt to collect a debt." *Id*. As for Section 1692f, we find *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1133 (9th Cir. 2021), instructive when it held that lawsuits attempting to take action not permitted by law are unfair. Pursuing an illegal foreclosure would seem to fall squarely within that category.

> in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances.

*Am. Fam. Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 800 N.E.2d 1015, 1019 (Ind. Ct. App. 2004) (quoting *Landowners v. City of Fort Wayne*, 622 N.E.2d 548, 549 (Ind. Ct. App. 1993) (citations omitted), *trans. denied* (1994)).

[23] Because no appeal of the district court's order was taken, the applicability of the law of the case doctrine is questionable. *See Riggs v. Burell*, 619 N.E.2d 562, 564 (Ind. 1993) ("Questions not conclusively decided in a prior appeal do not become the law of the case."). Even assuming that the doctrine might apply, it is discretionary, and decisions may be revisited particularly where extraordinary circumstances present themselves. Here, the district court remanded this case to the trial court and denied "as moot" Gaeta's motion for reconsideration of the district court's summary judgment opinion and Gaeta's motion for reconsideration of the district court's order for Gaeta to brief standing "because [the district court] does not have jurisdiction over these claims." Appellant's App. Vol. 2 at 40. Where a subsequent court explicitly determines that it lacks jurisdiction, remands a case to the court in which it was originally filed, and thereby denies as moot motions for reconsideration of its prior orders, we have little difficulty concluding that the original court was not bound by the subsequent court's decision. Therefore, the trial court did not abuse its discretion in addressing the issues presented upon remand.

## Section 2 – The trial court did not err when it found that Gaeta had standing.

[24] Mercer disputes the trial court's conclusion that Gaeta had standing. Mercer also asserts that Gaeta should be equitably estopped from arguing that he was injured by any FDCPA violations because in the district court he "agreed" that there was no injury. As such, Mercer claims that Gaeta should not have been permitted to introduce evidence of injuries. Alternatively, Mercer argues that Gaeta cannot prove that he detrimentally relied upon Mercer's foreclosure representations.

[25] Our supreme court recently explained and refined Indiana standing analysis as follows:

> "The threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute." *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 216 (Ind. 2022). The standing requirement "mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation." *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995). Whether a party has standing is a legal question we review de novo. *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022) (citing *Holcomb v. Bray*, 187 N.E.3d 1268, 1275 (Ind. 2022)).
>
> Indiana's constitution imposes structural limits on the exercise of judicial power. Although our constitution lacks the "case or controversy" requirement found in Article III of the United States Constitution, our separation-of-powers clause, Ind. Const. art. 3, § 1, "fulfills a similar function." *Pence*, 652 N.E.2d at 488 (citing *Ind. Dep't of Env't Mgmt. v. Chemical Waste Mgmt., Inc.*, 643 N.E.2d 331, 336–37 (Ind. 1994)). Standing is a "significant

restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." *Ibid.* Indiana law is clear that standing requires an injury, *Nicholson*, 190 N.E.3d at 351, which is met if the party shows it "ha[s] suffered or [is] in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Solarize*, 182 N.E.3d at 217 (quoting *Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 168 (Ind. 2017)).

*Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234, 1238 (Ind. 2023). Because standing under the Indiana Constitution is jurisdictional, it must exist at all stages of litigation, including at the summary-judgment stage. *Id*. at 1238-39.

[26] In its August 2022 order, issued prior to our supreme court's *Hoosier Contractors* guidance regarding standing, the trial court stated, "Gaeta does not have to allege or prove actual damages in order to move forward." Aug. 3, 2022 Order at 4 (paragraph 29). However, that statement is of no moment in this particular case because in the very next sentence of that same paragraph, the trial court stated: "Regardless, Gaeta alleges that each of the alleged FDCPA violations caused him to incur unnecessary attorney's fees." *Id*. Indeed, in his summary judgment motion with citations to designated materials, Gaeta explicitly alleged injury in the form of having to pay "thousands of dollars in attorney fees defending himself against Mercer's illegal foreclosure efforts." Appellant's App. Vol. 3 at 240. In addition, Gaeta noted that the illegal foreclosure filing

damaged his reputation[5] and precluded him from obtaining new credit. *Id*. at 242. Moreover, the foreclosure action led to family arguments and disputes, embarrassment, loss of sleep, and "other matters." *Id.* at 243. We find no reversible error in the conclusion that Gaeta met the requirements for standing at the summary judgment stage.

[27]  Likewise, we are unmoved by Mercer's related contention that Gaeta failed to designate specific evidence of "detrimental reliance," as Mercer claims *Hoosier Contractors* requires. Appellant's Br. at 45. *Hoosier Contractors* dealt with the Indiana Deceptive Consumer Sales Act, specifically, Indiana Code Section 24-5-0.5-4(a), which states: "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." Our supreme court reiterated that a "prerequisite for obtaining damages [under this statute] is that the claimant **relied** on the deception." 212 N.E.3d at 1239 (quoting *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019)) (emphasis in *Hoosier Contractors*). The FDCPA does not contain the same explicit reliance language that exists in the Indiana Deceptive Consumer Sales Act. Nonetheless, unlike the appellee in *Hoosier Contractors*, whose designated documents did not show that the appellant's deceptive acts harmed him "at all," *id*. at 1241, Gaeta's designated materials

---

[5] Reputational harm is hardly a novel concept but a "real-world injury" with "real-world consequences." *See Ewing*, 24 F.4th at 1154 ("The Consumers suffered an intangible, reputational injury that is sufficiently concrete for purposes of Article III standing.").

showed that Mercer's threat of foreclosure caused Gaeta to spend thousands of dollars on legal fees, damaged his reputation, and affected his credit and his family, his health, and his well-being. In contrast, our supreme court held that the appellant's deceptive acts in *Hoosier Contractors* did not put the appellee in harm's way "or leave him worse off than he would have been had [appellant] not violated the Act." *Id*. at 1242. Further, at trial, extensive evidence was introduced detailing the injuries suffered by Gaeta as a result of the illegal foreclosure proceedings. *See* Tr. Vol. 3 at 170-73 (foreclosure led to Gaeta being confused, scared, shut off, defeated, negative, anxious), 183 (foreclosure placed strain on Gaeta's relationships and family), 184 (Gaeta had sleep disturbances, memory issues, and was acting out of character), 237 (Gaeta was a "nervous wreck"), 243 (Gaeta incurred more than $52,000 in legal fees in defense of the foreclosure), 245 (Gaeta had to move in with his fiancée and commute long distances to his multiple jobs); *id*. at 31, 247 (Gaeta resorted to breaking into his former house to clean, paint, and fix items before its sale); Tr. Vol. 4 at 32 (pending foreclosure weighed on Gaeta and affected his mental capacity and attention, including at work).

[28]  Having concluded that Gaeta met the requirements for standing at summary judgment, we address Mercer's estoppel contention. Our supreme court recently describe judicial estoppel as follows:

> Judicial estoppel is a judicially crafted doctrine deriving from courts' inherent authority to protect the judiciary's integrity by prohibiting litigants from playing "fast and loose" with the judicial process. The doctrine does that by preventing litigants

from prevailing on contradictory positions in the same or subsequent proceedings. The rule is: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Because this is an equitable doctrine to prevent "improper use of judicial machinery," there is no "exhaustive formula," and there are no "inflexible prerequisites." But courts tend to focus on three considerations.

*Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 169-70 (Ind. 2024) (citations omitted). Those three considerations are: whether a litigant's argument is clearly inconsistent with its earlier argument, whether the litigant successfully persuaded a court to accept its earlier argument, and whether the litigant's actions would result in an unfair advantage or unfair detriment on the opposition absent estoppel. *Id.* at 170. "[W]e apply judicial estoppel to protect the integrity of our own state court proceedings, not as a sanction or deterrent for bad behavior in other courts that have declined their own opportunity to impose sanctions." *Id.* at 172.

[29] Within its October 2021 order, the district court stated that the "parties agree that the Court does not have jurisdiction over the claims alleged in [Gaeta's] Complaint" and "therefore does not have jurisdiction to address the arguments in the motion for reconsideration and will remand the action to state court." Appellant's App. Vol. 2 at 39. Mercer seems to contend that because Gaeta chose not to argue for standing in the district court, he should have been

"equitably foreclosed from arguing that he sustained an injury as a result of Mercer's conduct." Appellant's Br. at 38. We disagree.

[30] "When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing 28 U.S.C. § 1441(a)). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Id.* (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Gaeta filed his FDCPA action in our state court system. It was Mercer that removed the action to the district court. Oddly, it was also Mercer that, five years after removal, argued that Gaeta had no standing in federal court, which then put federal jurisdiction into question. Mercer did not demonstrate Gaeta's standing. Gaeta objected to having to show standing and explained his rationale as follows:

> [W]e were going to prove article 3 standing but it's not our burden. And you know what, some of these things pursuant to Federal Case Law in Federal court we would not have standing for certain claims not the (inaudible). We would have been fine then. So, for that reason I said you know what? Why not go to state court for everything so we elected to say you know what judge it's not our burden. It's theirs so put it on them. There after [sic], the judge said ok, why are you remanding back to state court? Because they didn't want to argue for article 3 jurisdiction and neither did[] we.

Tr. Vol. 2 at 11-12.

[31] Gaeta's counsel did not agree that the district court had no jurisdiction or that Gaeta had no injury. Gaeta's counsel simply acquiesced to Mercer's choice not to demonstrate standing and to the district court's resulting conclusion that it lacked jurisdiction, which resulted in the case returning to the court in which it was first filed. Gaeta was not making clearly inconsistent arguments and was not persuading the district court of anything. Gaeta was not playing "fast and loose" with the judicial process or acknowledging that he had no standing, as Mercer seems to imply. Rather, this was a pragmatic decision with the goals of preventing a bifurcation of claims between state and federal courts, avoiding further delays, and tamping down on associated fees and costs. *See* Appellee's App. Vol. 2 at 148-49. As such, estoppel does not apply.

[32] To summarize, Mercer does not contest the amount of damages found by the jury or the trial court. Mercer has not convinced us that the trial court erred in granting partial summary judgment in Gaeta's favor. The trial court was not bound by the district court's decision. Gaeta met the requirements for standing at summary judgment, and Gaeta did nothing at the district court that would have judicially estopped him from vigorously arguing standing at the trial court. Accordingly, we affirm.

[33] Affirmed.

Bailey, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Nicholas W. Levi
Kightlinger & Gray, LLP
Indianapolis, Indiana


ATTORNEY FOR APPELLEE

Duran L. Keller
Keller Law
Lafayette, Indiana